UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

UNITED STATES OF AMERICA    :    Criminal No. 07-0078 (GK)
                            :
        v.                  :
                            :
DENISE McLEOD and           :
NELSON BROCKENBORRUGH,      :
                            :
    Defendants.             :

OPPOSITION OF THE UNITED STATES TO
DEFENDANT BROCKENBORRUGH'S MOTION FOR SEVERANCE

The United States of America, by and through its attorney, the
United States Attorney for the District of Columbia, hereby
responds in opposition to the motion of defendant Nelson
Brockenborrugh for severance. In support of this opposition, the
government states as follows:

1. Defendants Denise McLeod and Nelson Brockenborrugh are
charged with conspiracy to commit wire fraud, a substantive count
of wire fraud, and D.C. Code offenses of first degree fraud,
forgery and uttering. They are also charged with aiding and
abetting one another in their efforts to fraudulently obtain a
parcel of real estate located at 1133 Sixth Street, N.W., in
Washington, D.C.

2. The government anticipates that the evidence at trial will
establish that in 2005, defendant Denise McLeod was a self-employed
businesswoman based in Maryland, who participated in real estate
transactions in the District of Columbia; and defendant Nelson
Brockenborrugh was employed as a Court Security Officer at the

-2-

Superior Court for the District of Columbia, located at 500 Indiana Avenue, N.W., in Washington, D.C.[1]

3. The victims in this case are the heirs of James A. Roy who, prior to his death on October 13, 2004, was the owner of the land and structure located at 1133 Sixth Street, N.W. On May 31, 2005, the administration of the estate of James A. Roy was granted to his granddaughter, Katrina Robinson.

4. The evidence will show that in April of 2005, defendants McLeod and Brockenborrugh approached Ms. Robinson at the property and discussed with her the possibility that they could purchase the property from her. They discussed with Ms. Robinson the fact that the owner had been her grandfather, but that he had recently died. They agreed to discuss a possible sale sometime in the future.

5. Sometime in August of 2005, defendant McLeod approached Cynthia Russell and advised that she and Brockenborrugh were interested in acquiring a parcel of real estate, and that she needed a notary to certify the deed. McLeod told Russell that she was prepared to pay $200 to have the transfer papers notarized. Russell and a co-worker, Lashawn Lewis, assisted in preparing a notarized deed, purporting to transfer the property from James Roy

---

[1] Also employed at the D.C. Superior Court was an individual named Cynthia Russell, who worked for the Clerk of Court, and was residing in a house in Maryland owned by Brockenborrugh and managed by McLeod. Russell worked with another individual named Lashawn Lewis, who was also a commissioned notary public in Prince George's County, Maryland. These individuals assisted in the forgery and uttering of a forged deed in this case.

-3-

to defendant McLeod for a stated price of $10,000.

6.  On or about September 8, 2005, defendant McLeod went to the Registrar of Deeds for the District of Columbia and filed the deed, purporting to transfer the property from James A. Roy to herself.  She was assessed $7,609.92 in transfer costs, fees, and taxes.  Half of the amount paid to the District of Columbia was later reimbursed to defendant McLeod by defendant Brockenborrugh.

7.  On or about October 1, 2005, defendants McLeod and Brockenborrugh agreed to sell the property to a real estate developer in Rockville, Maryland for a total price of $300,000.

8.  Five days later, defendants McLeod and Brockenborrugh went together to 1133 Sixth Street, N.W., and told people who were residing in the building that defendant Brockenborrugh was "a U.S. Marshal" and they were to vacate the premises immediately. Defendants McLeod and Brockenborrugh represented to the residents and others that they were the new owners of the property.

9.  On October 7, 2005, a title search revealed that James Roy had died prior to the making the deed purporting to bear his signature.  Based on this information, the developer advised the defendants that he would not purchase the property until it was properly acquired.

10.  On or about October 19, 2005, defendant McLeod re-initiated their contact with Ms. Robinson  Thereafter, defendants McLeod and Brockenborrugh, along with others, began negotiations with Ms. Robinson and others they believed to be family members

-4-

(but who were actually covert FBI agents).  During recorded conversations, defendants McLeod and Brockenborrugh made numerous misrepresentations about themselves and the condition of 1133 Sixth Street, N.W., in order to induce Ms. Robinson to sell the property for a fraudulently reduced price.  For example, they told her that:

> (A) Defendant Brockenborrugh was a "U.S. Marshal" and that his influence with the police department was protecting Ms. Robinson from civil liability that would arise from the presence of the residents they had forced from the premises and a possible $500 per day fine for "wrongful housing;"
>
> (B) The building on the premises was worthless and had to be torn down completely; and
>
> (C) The building contained asbestos, and the defendants were going to have to pay $200,000 to decontaminate the building and remove and dispose of the carcinogens.

11.  On or about October 28, 2005, the defendants again met with Ms. Robinson and others purporting to be heirs of James Roy. Again, the conversation was recorded.  At this meeting, the defendants presented a document purporting to be a document of the government of the District of Columbia, which falsely stated that the tax-assessed value of the property was $114,430.  Defendant McLeod had forged the document by altering various values.

12.  A "closing" was scheduled for the proposed sale to the defendants, but the FBI concluded the undercover phase of the investigation before it could take place.  On November 3, 1005, FBI agents confronted and interviewed defendant McLeod and defendant Brockenborrugh and a search warrant was executed on the offices of the Maryland developer.

-5-

Argument

A.   Defendant Brockenborrugh is not entitled to severance

Defendant Brockenborrugh seeks to sever his trial from that of
his codefendant under Fed. R. Crim. P. 14.  He argues that (1) the
evidence is overwhelming against his co-defendant, whom he says
committed this crime alone, and that evidence may have an unfair
"spillover effect" against him (*see* Defendant's Motion at 2), and
(2) his intention to blame his co-defendant (combined with the
possibility that she may blame him) will create "a mass confusion
of evidence" and a "mutually antagonistic" and "irreconcilable"
defense requiring severance (*id.*).[2]  These contentions are without
merit and should be denied.

The granting of severance under Fed. R. Crim. P. 14 is a
matter well within the discretion of the trial court.  *See* <u>United
States</u> v. <u>Manner</u>, 887 F.2d 317, 324 (D.C. Cir. 1989), *cert. denied,*
493 U.S. 1062 (1990).  The case law reflects a clear preference for
joint trials, where possible.  *Id.*  *See also* <u>United States</u> v.

---

[2]   One issue frequently raised in motions for severance but
not raised here, is confrontation of a co-defendant's statement.
*See* <u>Bruton</u> v. <u>United States</u>, 389 U.S. 818 (1968).  Indeed, the
government is filing a motion *in limine*, along with this
response, advising the defendants of the government's intention
to introduce at trial the non-custodial statements given by each
of the defendants (and provided to them pursuant to Rule 16,
Fed.R.Crim.P.).  Although not raised by the defendants at this
point, the government assures the Court that redacted versions of
the statements and a proposed limiting instruction will be
provided to and discussed with counsel, well in advance of trial.
*See* <u>Gray</u> v. <u>Maryland</u> 523 U.S. 185 (1998); <u>Richardson</u> v. <u>Marsh</u>,
481 U.S. 200 (1987).

-6-

*Bruner*, *supra*, 657 F.2d at 1289-90.   Rule 14 perhaps even contemplates some degree of prejudice to a defendant in a joint trial, but severance is *not* required simply because a defendant might have a better chance of acquittal if he or she, or a count in the indictment, were tried separately.   *See* United States v. Halliman, *supra*, 923 F.2d at 884 (citing United States v. Manner, *supra*, 887 F.2d at 324).   *See also* United States v. Wright, 783 F.2d 1091, 1095 (D.C. Cir. 1986); United States v. Hopkins, 464 F.2d 816, 819 (D.C. Cir. 1972); United States v. Wilson, 434 F.2d 494, 501 (D.C. Cir. 1970).

The public's interest in the efficient and economic administration of justice is served here by trying the counts together, not just because one trial is less than two, but also because a jury is considered capable of following an instruction that the evidence against each defendant is to be considered separately.   Neither claim made by defendant Brockenborrugh is sufficient to overcome the strong presumption that defendants charged together for one offense should be tried jointly, striking the balance "in favor of joint trials."   *See, e.g.,* United States v. Clarke, 24 F.3d 257, 256 (D.C. Cir. 1994); United States v. Perry, 731 F.2d 985, 992 (D.C. Cir. 1984; United States v. Bambrill, 449 F.2d 1148, 1159 (1979).   "The Supreme Court has found a general preference for joint trials in the federal system, based on the interests of efficiency and a reduced risk of inconsistent verdicts."   United States v. White, 116 F.3d 903, 916 (D.C. Cir.

-7-

1997) (a RICO case), *citing* <u>Zafiro v. United States</u>, 506 U.S. 534, 537 (1993).

The trial judge enjoys wide latitude in determining whether to grant or deny a motion for a separate trial. <u>United States v. Gbemisola</u>, 225 F.3d 753, 760 (D.C. Cir. 2000) (Garland, J.). In *Gbemisola*, the defendants were found to be properly joined for trial under a rule not noted by the defendants, here, Rule 8(b), which provides:

> Two or more defendants may be charged in the same indictment or information if they are alleged to have participated in the same act or transaction or in the same series of acts or transactions constituting an offense or offenses.

Fed. R. Crim. P. 8(b). But the principles of joinder apply, here, and would suggest that a joint trial is plainly appropriate because (1) the defendants participated in defrauding the same victim, (2) buying and selling the same parcel of real estate, and (3) participating in the same misrepresentations at the same negotiation sessions. As such, the government's evidence against both is largely the same, except that defendant McLeod alone forged the written documents involved in the negotiation and sale. Moreover, the rule permitting joinder is broadly construed, in light of the advantages of joinder, including elimination of redundant presentation of evidence, decreased inconvenience to witnesses, and in view of "the heavy and increasing criminal case load in our trial courts." See <u>United States v. Gibbs</u>, 904 F.2d

-8-

52, 56 (D.C. Cir. 1990).

Defendant's motion does not challenge joinder under Rule 8(b), but suggests that joinder is improper for the reasons set forth in Rule 14, which provides in part that:  "If the joinder . . . appears to prejudice a defendant or the government, the court may order separate trials or counts, sever the defendants' trials, or provide any other relief that justice requires."  The defendants have the burden of demonstrating prejudice, however, for "[t]he prevailing rule is that defendants charged with jointly committing a criminal offense are to be tried jointly."  Baxter v. United States, 352 A.2d 383, 385 (D.C. 1976).  "Severance is due only if the evidence against one's co-defendants is 'far more damaging' than the evidence facing the accused, making it unreasonable to expect a jury to compartmentalize the evidence."  United States v. Gibbs, supra, 904 F.2d at 56; United States v. Manner, 887 F.2d 317, 324 (D.C. Cir. 1989).

In order to justify severance of their trials and the resulting additional expenditure of resources and inconvenience to witnesses, our local courts require that defendants show manifest prejudice from being jointly tried, which occurs only where the evidence of a defendant's participation in a crime is "de minimis when compared to the evidence against his codefendants."  See Christian v. United States, 394 A.2d 1, 21 (D.C. 1978).  As set forth above, the evidence against defendant Brockenborrugh is not de minimis; rather, he jointly "purchased" the real estate for the

-9-

ridiculous price of less than $10,000, including transfer taxes
(his share); he tried to sell it with defendant McLeod for an
immediate profit of approximately $290,000; he used his apparent
authority to take control of the premises; he made representations
about his influence with the police department to frighten the
victim into quickly selling the property to avoid fines and civil
liability; and he actively participated in all negotiation sessions
at which all of the other misrepresentations were made. While he
did not prepare the forged documents in this case, that difference
in the quantum of proof against these two defendants is not
sufficient to require this court to conduct two separate trials.


   B.  <u>The defenses are not antagonistic nor irreconcilable</u>

       Defendant Brockenborrugh has not articulated a conflict in
defenses sufficient to warrant severance. To demonstrate
prejudicial joinder, conflicting defenses must be "so
irreconcilable that the jury would infer guilt from this fact
alone." <u>Christian</u>, *supra*, 394 A.2d at 21. The mere possibility of
irreconcilable defenses is not sufficient to require severance.
For example, in <u>United States v. Hurt</u>, 476 F.2d 1164 (D.C. Cir.
1973), the two defendants, Huff and Hurt, presented conflicting
defenses. Defendant Huff presented an alibi defense, while
defendant Hurt testified that he and co-defendant Huff were both at
the scene of the crime, but Huff and the victim of the crime went
together into the parking lot without Hurt. <u>Id</u>. at 1169. The D.C.

-10-

Circuit found that even these irreconcilable defenses were not sufficiently prejudicial to require severance, because both defenses were subject to the scrutiny of cross-examination, and because there was ample evidence against defendant Huff to prove that he was at the murder scene even without the testimony of co-defendant Hurt. Id. at 1169. Similarly, in this case, any evidence offered by one defendant that might conflict with the other's defense would be subject to cross-examination. Simply claiming that the other defendant is more responsible or that she duped defendant Brockenborrugh does not suggest that a danger that the defenses in this case will be so irreconcilable that a jury would infer guilt from that evidence alone, as the defendant is required to show in order to be entitled to severance. Christian, supra, 394 A.2d at 21; see also Rhone v. United States, 365 F.2d 980, 981 (D.C. Cir. 1966).

Defendant Brockenborrugh's reliance on *Zafiro* in this context is misplaced. In *Zafiro*, the Supreme Court held that a joint trial did *not* unduly prejudice defendants who each claimed innocence and accused the other of the crime. 506 U.S. at 540-41). *See also* United States v. Applewhite, 72 F.3d 140, 144-45 (D.C. Cir. 1995)(defendant charged with narcotics and weapons offenses arising from search of apartment failed to demonstrate a high risk of prejudice requiring severance when he denied involvement and codefendant argued that defendant controlled drugs and gun); United States v. Brown, 16 F.3d 423, 433 (D.C. Cir.)(defendant charged

-11-

with narcotics and weapons offenses arising from search of codefendant's house failed to demonstrate a high risk of prejudice requiring severance when he denied involvement and claimed that offenses were committed by codefendant's family and when codefendant argued that defendant stored drugs and gun in her apartment).

This is not a case where one defendant is claiming alibi and the other self-defense. Here, defendant Brockenborrugh is claiming that he did nothing wrong and his co-defendant is responsible. These concepts are not antagonistic; they are not irreconcilable; and they are not beyond a jury's ability to consider separately.[3]

---

[3]    Defendant Brockenborrugh also argues that his intention to "attack" the co-defendant will subject her to "two prosecutors" in the trial (*see* Defendant's Motion at 2). This argument is more commonly made by the defendant who stands in peril of being doubly prosecuted. It is not at all clear, therefore, that defendant Brockenborrugh would be prejudiced in this way, by a joint trial.

-12-

<u>Conclusion</u>

For  the  forgoing  reasons,  the  government  requests  that
defendant Brockenborrugh's motion to sever be DENIED.

Respectfully submitted,

JEFFREY A. TAYLOR
United States Attorney
for the District of Columbia

/s/

By: _____
Barbara E. Kittay
D.C. Bar No. 414216
Aaron Mendelsohn
D.C. Bar No. 467570
Assistant U.S. Attorneys
555 4th Street, N.W.
Washington, D.C.  20530
(202) 514-9732