**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | Criminal No. 07-0078 (GK) |
| v. | : | |
| | : | |
| NELSON BROCKENBORRUGH, | : | |
| | : | |
| Defendant | : | |
| | : | |
| _____ | : | |

## GOVERNMENT'S MEMORANDUM IN AID OF SENTENCING

The United States, by and through its attorney, the United States Attorney for the District of Columbia, respectfully files this memorandum to aid the Court in its sentencing decision. Consistent with the Presentence Report ("PSR") and the guidelines range recommended by the United States Sentencing Guidelines ("U.S.S.G."), the Government requests that this Court sentence the defendant within an expanded range of 30 to 57 months for the offenses of conviction, wire fraud and conspiracy to commit wire fraud. The range represents relevant conduct (on the low end), enhanced by the anticipated amount of gain, and two additional adjustments (on the high end): obstruction of the administration of justice and abuse of a position of trust. The government also requests that the Court impose a significant fine.

As the Court is well-aware, this is a real estate fraud case. Defendant Brockenborrugh was found guilty by a jury of Counts 1 and 2 of the Indictment and was acquitted of the remaining counts. Co-conspirator Denise McLeod pleaded guilty to

-2-

the indictment and has been sentenced to 24 months incarceration.

A.  Background

In the Spring of 2005, defendant Brockenborrugh was a Court Security Officer at the D.C. Superior Court, and defendant McLeod was a real estate agent.  They became interested in acquiring a parcel of real estate that was being used as a rooming house, located at 1133 Sixth Street, N.W., when a nearby neighbor of the property advised defendant Brockenborrugh that the elderly owner of the property had died.  In April of 2005, the defendants went to the property and met Katrena Robinson, the granddaughter of the deceased owner, James Roy.  Ms. Robinson testified at trial that at this very first encounter, defendant Brockenborrugh showed her a badge and claimed that he was a U.S. Marshal.[1]

In any event, Ms. Robinson explained to the defendants that she was in the process of having herself formally named as the administrator of her grandfather's estate, both in Maryland and D.C. and was not at that time in a position to dispose of the property.  Defendant McLeod contacted the estate's attorney, who made a note that she was buying the property with or on behalf of a "Marshal," and McLeod was told to wait.  She didn't.  Instead, she elected to draft a deed transferring the property for

---

[1]    The defendant testified in his defense.  He claimed that he showed Ms. Robinson a badge issued to retired D.C. police officers, but he could not give a credible explanation why he felt the need to introduce himself to her in this manner.

-3-

$10,000, on which she forged Mr. Roy's signature.

Defendant McLeod solicited the assistance of two employees of the Superior Court clerk's office to witness and notarize the deed.  One clerk, a tenant in a property owned by defendant Brockenborrugh, purported to witness Mr. Roy's "signature" and another clerk added her notary seal.  Both of the clerks pleaded guilty to aiding and abetting the uttering of the deed to the D.C. Recorder of Deeds, based on defendant McLeod's act of filing of the deed in November 2005.  One week after the forged deed was filed, defendant Brockenborrugh paid defendant McLeod one-half of the filing fees and the purported amount of sale, on which he added the notation "for my half of 1133 Sixth Street, N.W."

Soon thereafter, the defendant used his "authority" as an employee of a contractor with the U.S. Marshals Service, to take possession of the property.  Wearing his badge, he and defendant McLeod went to the property and evicted the tenants (who included some residents who had residential lease agreements with the Roy family and others who did not).  Defendant Brockenborrugh later bragged to Ms. Robinson that he had a subsequent encounter with one of the tenants and the D.C. Superior Court courthouse, in which the tenant acknowledged that he was "a real Marshal."

The defendants were clearing the property of tenants, because they had already arranged to sell the property to a developer in Rockville, Maryland, for $300,000.  This had caused

-4-

the developer to request a routine title search, which resulted
in the discovery of the forgery.  Thereafter, the developer would
not complete the purchase unless and until the defendants
acquired the property properly.

So the defendants initiated negotiations with the heirs,
unaware that Ms. Robinson and her attorney had independently
discovered the forged deed; that they had solicited the
assistance of the FBI; and that the negotiations thereafter were
tape-recorded.  The defendant cannot explain why he participated
in these negotiations, given his belief that he already owned the
property; and if he now claims that he indeed did <u>not</u> believe he
owned the property, he cannot explain why he asserted his
authority to evict the tenants.

In the course of the negotiations with Ms. Robinson and the
"heirs," the defendants made several misrepresentations, in an
effort to induce the heirs accept a fraudulently-depressed price.
These misrepresentations included:  1) that the building on the
property was not habitable and was worthless; 2) that the
property would require costly decontamination processes; 3) that
the assessed valuation of the property was $114,000 (a fact that
the defendants supported with an altered "official" tax
assessment document that was faxed to Ms. Robinson); and 4) that
there were no problems discovered in the title search (a fact
that the defendants supported with a letter from the settlement

-5-

attorney, faxed to the heirs knowing that the content of the
letter was untrue, since the title search had revealed the
fraudulent deed).  Also (significantly), defendant Brockenborrugh
told Ms. Robinson that his influence with the police department
was protecting her from civil fines, liability from the criminal
acts of her tenants, and property damage (including fire) from
tenants who he acknowledged were angered by the eviction.
According to defendant Brockenborrugh, if he and Ms. Robinson
could not reach an agreement on the sale of the property, the
police "protection" that he had importuned would cease.

Ultimately, the sale was not completed, of course, and the
existence of the FBI investigation was made known to the
defendants.  Defendant Brockenborrugh blames McLeod, and claims
that she had tricked him and lied to him.

B.  <u>Sentencing Guidelines</u>

1.  Relevant Conduct

The Government agrees with the conclusions set forth in the
PSR and further believes that the Court should apply an
adjustment to address the defendant's perjury at trial.  The
government believes, therefore, that the reasonable and
appropriate extended range under the U.S.S.G. is **30 to 57 months**,
calculated as follows:

1.  The base level offense for violation of a 20-year
    maximum fraud statute is 7 (§2B1.1(a)(1));

2.  12 levels are added for loss greater than $200,000 but

-6-

less than $400,000 (§2B1.1(b)(1)(G));

3.    2 levels are added for obstruction of the
      administration of justice (§3C1.1); and

4.    2 levels are added for abuse of a position of trust
      (§3B1.3)

5.    **Total adjusted offense level: 23.**

The government agrees with the PSR that the intended
financial gain in this case is $300,000, based on the defendants'
actions to acquire the property for almost nothing (defendant
Brockenborrugh's check to defendant McLeod was less than $9,000)
and to sell it to the Rockville developer for $300,000.

Of course, there are additional methods of calculating the
intended loss or gain, some of which require an assessment of the
market value of the property, given the fact that the defendants
intended to deprive Ms. Robinson of her property altogether, at a
time when she could have sold it for a great deal of money.  But
the government agrees that any calculation based on market value
is more speculative and we prefer the calculation applied by the
Probation Officer, as it is based on facts in the record and
gives the defendant the more generous view.

2.    Upward Adjustments and Fines

The government believes that the Court has discretion to
apply the two upward adjustments set forth above, specifically,
obstruction of the administration of justice and abuse of a
position of trust.

-7-

a. *Obstruction*:  The defendant's testimony in his trial was
not truthful, to such a degree that the government believes an
upward adjustment applies under U.S.S.G. §3C1.1.  Under §3C1.1,
the defendant may not "provide[] materially false information to
a judge" (Application Note 4(f)).

> This provision is not intended to punish a
> defendant for the exercise of a
> constitutional right.  A defendant's denial
> of guilt (<u>other than a denial of guilt under
> oath that constitutes perjury</u>), refusal to
> admit guilt or provide information to a
> probation officer, or refusal to enter a plea
> of guilty is not a basis for application of
> this provision.  In applying this provision
> in respect to the alleged false testimony or
> statements by the defendant, the court should
> be cognizant that inaccurate testimony or
> statements sometimes may result from
> confusion, mistake, or faulty memory and,
> thus, not all inaccurate testimony or
> statements necessarily reflect a willful
> attempt to obstruct justice.

U.S.S.G. §3C1.1, Application Note 2 (emphasis supplied).  The
defendant could have declined to testify, of course, but he
elected to take the stand and he testified falsely.

Defendant Brockenborrugh falsely denied that he evicted the
tenants, that he displayed a U.S. Marshals badge, that he
asserted the authority of a federal marshal, that he represented
himself to the heirs as a federal marshal, that he threatened Ms.
Robinson that he could cause the withdrawal of police attention
to her property, and that he had an ongoing relationship with his
co-defendant.  This testimony was not the result of confusion,

-8-

mistake, or faulty memory; indeed, the defendant was debriefed about many of these matters; moreover, the contours of permissible cross-examination were made known to him (in discussions with the Court), well before he was confronted with the questions, and he heard the tape recordings of his conversations with the victim many times, including in court, just days before his false testimony.  He is a retired police officer, who works in the Superior Court, and he owns and has transferred numerous parcels of real estate.  In short, he is an intelligent man, who knew and remembered the events about which he testified.

We believe the Court can and should make findings that the defendant's false testimony in this case was given willfully, given his experience with the criminal justice system and his advance knowledge of the subject matter of cross-examination.

b.  *Abuse of a Position of Trust*: The government agrees with the PSR that the Court should apply a two-level upward adjustment for "abuse of a position of trust," under §3B1.3.  The badge issued to the defendant by the Marshals Service was used by him in two ways:  to intimidate the residents of the building to vacate the premises and to get the victim to trust him as a law enforcement officer so that she would accept misrepresentations.

It is the government's position that the defendant used his employment as a Court Security Officer (arrogating onto himself

-9-

the even more powerful position of "Marshal") to take control of
the premises.  He did this by performing an eviction -- a
function that in the District of Columbia is uniquely entrusted
to the U.S. Marshals Service.  Thus, his role in this offense was
essential to the success of conspiracy.  No one could have
succeeded in taking possession of the property except someone who
would claim to be a U.S. Marshal.  Defendant Brockenborrugh
bragged about the eviction later, in his discussions with
Ms. Robinson, when he made of point of telling her that several
days after the eviction, one of the tenants came into D.C.
Superior Court and upon seeing the defendant, said "Oh -- you're
a *real* Marshal!"  Confronted with this statement in his own
testimony, the defendant denied that it happened, claiming that
he had walked away from the tenant, preferring not to engage with
him in the courthouse.  But when pressed about why he would
relate such a story to the victim, he could *not* explain why he
would have done so, other than to impress her again with his
status as a "real" Marshal.

    Defendant Brockeborrugh has denied that he ever used his
position to his advantage, but the trial testimony otherwise
demonstrates that from the first moment he met Ms. Robinson, he
was using his badge to gain her trust.  He denies, too, that he
used his badge to perform an "eviction," claiming he was
justified in removing the tenants because of fire code

-10-

violations.  But it is clear that defendant Brockenborrugh's
purpose in removing the tenants was *not* for fire code violations;
rather, it was for personal gain.  And if he had not displayed
his badge, the tenant visiting the courthouse couldn't have said,
"Oh – you're a *real* Marshal," as the defendant related.

        For all of these reasons, the government believes that the
evidence supports a two-level increase for obstruction, under
U.S.S.G. § 3B1.3.

        c.  *Fines*.  The U.S.S.G. recommends a fine in the range of
$7,500 to $75,000 for level 21 (the total offense level set forth
in the PSR) or $10,000 to $100,000 for level 23 (should the Court
decide to apply the two-level enhancement for obstruction).  We
believe that a fine is appropriate in this case, because the
defendant's motive was financial gain.  Also, as the Court has
noted many times, crimes motivated by greed can be deterred by
the imposition of significant punishment.

        C.  Sentencing Factors under 18 U.S.C. §3553

        As the Court is well-aware, the recommended sentence set
forth in the U.S.S.G. is but one factor to consider in
determining an appropriate sentence.  *See* 18 U.S.C. §3553(a).
But as set forth below, the §3553 considerations the Court should
consider do not provide a basis in this case, for a sentence
other than that recommended by the Sentencing Commission.

        First, it is clear from the explicit language of §3553 that

-11-

the Guidelines are important.  The framers of §3553 both endorsed
and respected the ranges set by and the policy statements made by
the United States Sentencing Commission, which in these
circumstances recommends imprisonment.  Second, we note that the
converse is also true, that is, that the U.S.S.G. explicitly
recognizes §3553 as its lynchpin, setting forth in its preamble
its reliance on the statute and calling out each and every factor
set forth therein.  We note most particularly the factor set
forth in §3553(a)(6), "the need to avoid unwarranted sentence
disparities among defendants with similar records who have been
found guilty of similar conduct," which is the heart and spirit
of the Guidelines.  *See* 18 U.S.C. §3553(a)(6).  It is with this
commitment that the government presses the Court for a sentence
consistent with the Guidelines.

    Looking to the factors of §3553, we first contend that a
sentence within the range of 30 to 57 months and a fine are
appropriate to the "nature and circumstances of the offense and
the history and characteristics of the defendant" (*see*
§3553(a)(1)).  The defendant's history and characteristics
reflect an individual with employable skills, a salary, a
pension, and investments more than sufficient to support himself
and his family without resorting to crime.  In contrast, his
victims were individuals much less fortunate.  The government
believes that only a sentence of imprisonment is sufficient to

-12-

"reflect the seriousness of the offense ... promote respect for
the law, and ... provide just punishment" (*see* §3553(a)(2)(A)),
and at the same time "afford adequate deterrence to [future]
criminal conduct" (*see* §3553(a)(2)(B)).

Significantly, §3553 places fundamental emphasis on
uniformity of sentencing. A "Zone C" sentence in the range of 30
to 57 months is uniform and appropriate, because it is consistent
with similar crimes and the defendants committing them. The
defendant can articulate no compelling fact or circumstance that
justifies a sentence lower than similarly situated offenders.

As we have stated in connection with the co-defendant's
sentencing, this conduct was outrageous. Forcing individuals out
of their homes is extreme conduct, and a former police officer
(and current court security officer) is expected to have better
judgment. These are the acts of a bully. A man's home is his
castle, no matter how humble, and the defendant had no right to
perform an eviction for his own profit.

Moreover, the defendant took advantage of his co-
conspirators acts of altering public records affecting the
ownership of real property. These defendants had no right to
deprive Mr. Roy of his ability to provide for his heirs through
the succession of ownership in real property and of his intention
to provide a source of financing for their educations. These
were not and are not wealthy people; indeed, all of the

-13-

defendants in this case were clearly more fortunate than these victims.  Yet, the defendants believed they were more entitled to profit from 1133 Sixth Street than was the family that had owned it for 50 years.

It is disgraceful that this defendant would act as a bully, alongside a co-conspirator who would commit forgery; both joining forces to cheat and steal through misrepresentation.  These acts are not the tools of "clever" business dealings.  They are wrong. For his misrepresentations to the victims, for his perjurious testimony before this Court, and for his abuse of authority, defendant Brockenborrugh deserves significant punishment, including incarceration and a fine.

## Conclusion

For the reasons set forth herein, the government believes that a sentence in the extended range of 30 to 57 months is reasonable and appropriate and a fine in the range of $10,000 to $100,000.

Respectfully submitted,

JEFFREY A. TAYLOR
UNITED STATES ATTORNEY
D.C. Bar Number 498610

By:        /s/
_____

BARBARA E. KITTAY
D.C. Bar Number 414216
Assistant U.S. Attorney
555 Fourth Street, N.W., Rm. 4846
Washington, D.C.  20530
Tel. (202) 514-6940
Barbara.Kittay@usdoj.gov