IN THE UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF COLUMBIA

UNITED STATES OF AMERICA       :
                                          :
              v                       :       Crim. No 07-78-02 (GK)
                                           :
NELSON BROCKENBORROGH       :

MOTION FOR BOND PENDING APPEAL

      Defendant Nelson Brockenborrogh, through undersigned  counsel, respectfully requests that the Court grant him bond pending appeal of his convictions. As grounds therefore, Defendant states the following:

      1. Defendant was indicted on one count of conspiracy to commit wire fraud, wire fraud, first degree fraud, forgery and uttering a forged instrument.[1] He was convicted by a jury of the conspiracy to commit wire fraud and wire fraud; he was <u>acquitted</u> of the other three counts. On February 14, 2008, Defendant was sentenced to 46 months incarceration, two years supervised release, a $10,000 fine and a $200 assessment.

      2. The next day, February, 15, 2008, undersigned counsel entered his appearance and filed a notice of appeal on behalf of Defendant. (Defendant's trial counsel, Sol Rosen, Esq., was only retained to represent Defendant through sentencing.) Undersigned counsel has obtained and reviewed the file of trial counsel, and has ordered the transcripts; however, he remains unaware of the specific testimony

---

[1] Codefendant Denise McLeod was also charged with the same offenses; she entered guilty pleas to the indictment prior to trial.

presented at trial. This motion is based, therefore, on the limited record available to him, and Defendant reserves the right to supplement the motion based upon a review of the trial transcripts.

3. Defendant has no criminal record prior to the instant offenses and has ample ties, both personal and financial, to the area. Thus, he asserts that he presents no risk of flight or danger to the community; indeed, the Court's decision to permit Defendant to self-surrender to the Bureau of Prisons is an implicit recognition of this fact. The principal issue relating to the question of bond pending appeal is whether there is a substantial question of law or fact likely to be successful on appeal. Without access to the trial transcripts, counsel for Defendant cannot at this time specify an issue likely to result in a reversal or new trial; however, Defendant asserts that there are issues relating to his sentencing, which if successful on appeal, would likely result in a reduced sentence which might be less than the expected duration of the appeal.

4. The court calculated Defendant's offense level as 23, with a criminal history category of 1. The Court, agreeing with the United States and the probation officer, and over the objection of Defendant, increased the offense level from a base level of 7, by 12 levels for a loss over $200,000, by 2 levels for abuse of position of trust, and by 2 levels for obstruction of justice (base upon Defendant's alleged false testimony at trial). While Defendant would reserve on the issue of obstruction of justice, until counsel can read Defendant's trial testimony, Defendant asserts that the Court was incorrect in its application of the other two increases in the offense level.

5. The charges concerned alleged efforts of codefendant McLeod and Defendant to purchase the property at 1133 Sixth Street, N.W., Washington, D.C. from the heirs of James Roy for an price artificially deflated through fraud. Apparently there were two such attempts. In one instance, codefendant McLeod forged signature of James A. Roy on a deed to the property in return for a $10,000 payment. This effort was thwarted when the fraud was detected during a title search.

6. The Defendants, along with Nelson Carter and Kenneth Silbert, then entered into negotiations with heirs of James A. Roy. On October 28, 2006, the four prospective purchasers believed that they had agreed with an FBI agent posing as James Roy, a grandson, acting on behalf of the Roy heirs, to sell them the property for $165,000. The purchasers agreed to waive a real estate agent's commission and to pay the closing costs. The United States contended that McLeod and Defendant had attempted to persuade the heirs to accept a price below the market value of the property by making several false statements about the condition, and value, of the property.

7. "Intended Loss": The purported agreement was, of course, a ruse by law enforcement and no actual sale of the property took place; thus there was no actual loss to the Roy heirs. In calculating the loss for purposes of the sentencing guidelines, the United States, the probation officer, and the  Court relied the "intended loss" to the heirs. There was apparently no evidence of the actual market value of the property; (apparently there had been several fires and other problems with the property.) There was; however, some evidence that McLeod and Defendant had arranged to sell the

property for $300,000 and this was the figure which was used to calculate the "intended loss."

8. In order for the sale price which McLeod and Defendant expected to receive to be a "loss" to the Roy heirs, one has to assume that the Roy heirs would have been able to realize the same sale, such that the difference between what they would have received from the defendants and this sale price would be their "loss." Based upon the conduct of fraudulently forging the deed and trying to obtain the property for a mere $10,000, a loss of some $290,000 would be reasonable. However, Defendant was acquitted of the counts relating to the forged document, not unreasonably since there was no evidence that Defendant had participated in that forgery or was aware of it. Thus, assuming for purposes of this motion that Defendant had participated in fraud during the subsequent negotiations, the "intended loss" would be no more than the difference between the expected $300,000 sale price and the $165,000 Defendant and the other purchasers were prepared to pay the Roy heirs - $135,000. The offense level should have been increased by no more than 10 levels, not 12.

9. Moreover, the "agreement" reached between the purchasers also provided that they would assume some $6,000 in closing costs, and would waive the usual commission. Although the costs of the commission was never specified, traditionally the seller assumes a 6% commission, which on a purchase price of $165,000 would be $9,900. Together the "agreement" would have saved the Roy heirs another $15,900 in costs normally assumed by a seller. Defendant argues, therefore, that the "intended loss" should be reduced to $119,100 ($165,000 - $15,900). In addition, the evidence is

undisputed that Defendant himself <u>lost</u> $8,804 by writing McLeod a check, which he believed would go to the back taxes and water bills. Thus, Defendant contends that the "intended loss" of $119,100 should have only led to a increase in his offense level of 8. (These arguments should not be construed as a waiver of the right to assert that the "expected sale price" was not an accurate measure of loss at all.)

10. <u>Abuse of Position of Trust</u>: Defendant also objects to, and intends to appeal, the 2 level increase for "abuse of a position of trust." Assuming even that Defendant was falsely represented to be a United States Marshal, Defendant contends that this position was not "abused" in a way that facilitated the commission of the offenses in question, fraud upon the Roy heirs. It appears that Defendant may have facilitated the removal of tenants from the property by arranging to have the property condemned and being present when they were directed to leave. It is difficult to imagine how this facilitated any fraud on the Roy heirs. By all accounts, the tenants included "squatters" who were stealing utility services and otherwise engaging in criminal behavior. Conceivably, after two fires, and continuing problems with "sparks," the property was indeed "uninhabitable," even if not to the dramatic extent represented by McLeod. In any event, removal of the tenant made the property <u>more valuable</u> to the Roy heirs.

11. The presentence report, and the government's sentencing memorandum, made reference to Defendant's representations that his influence with police officers, whom he had apparently known while a police officer himself, assisted Ms. Robinson in avoiding "civil fines" for "wrongful housing." As counsel understands the facts, the property had indeed been condemned by the fire department. Defendant apparently

was assuring Ms. Robinson that he would encourage the police to see that the law was being obeyed and that people were not sneaking back into the house, which would not only violate the law, but would also subject the owners of the property to fines if they were found to have permitted it. Whatever "abuse" there may have been in arranging for the tenants to leave the premises, there would be no "abuse" in encouraging police to see that the law was obeyed.

12. If each of the above arguments, and no others, is accepted on appeal, Defendant's offense level would be 17, not 23, calling for a range of 24-30 months. If only the argument that the "intended loss" is the difference between the "agreed" purchase price of $165,000 and the "expected" sale price of $300,000 is successful, Defendant's offense level would be 21, calling for a range 37 to 46 months. Since the Court sentenced to the bottom of the guideline range, were the Court to do so at the lower level, Defendant would have a sentence of 37 months. If he receives 15% good time, that would be 32 months, and if he is permitted to go to a halfway house with 6 months remaining, that would be 26 months. Defendant intends no disrespect to the Court of Appeals to suggest that it is easily conceivable that the appellate process could take two years or so.

13. Should the Court grant Defendant bond pending appeal, he will comply with any additional conditions the Court might set.

WHEREFORE for these reasons, and those included in the attached memorandum of points and authorities, Defendant respectfully requests that the Court suspend the sentence of incarceration and grant him bond pending appeal.

Respectfully submitted

/s/

Richard K. Gilbert
Bar. No. 939884
601 Pennsylvania Avenue, N.W.
Suite 900, South Building
Washington, D.C.  20004
(202) 898-0857
(202) 544-0024 (fax)
rkgesq@juno.com

Attorney for Defendant

IN THE UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF COLUMBIA

UNITED STATES OF AMERICA          :
                                  :
            v                     :          Crim. No 07-78-02 (GK)
                                  :
NELSON BROCKENBORROGH             :

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
MOTION FOR BOND PENDING APPEAL

1. 18 U.S.C. §3143 (b) permits a judicial officer to release a defendant sentenced to a term of incarceration pending appeal if the judicial officer finds by clear and convincing evidence that the defendant is not likely to flee or pose a danger and if the appeal raises a substantial question or law or fact that is "likely" to result in "a reduced sentence to a term or imprisonment less than the total of the time already served plus the expected duration of the appeal process."

2. Defendant's offense level was calculated according to U.S.S.G. §2B1.1, which provides for a base level of 7 (for an offense with a statutory maximum of 20 years) and graduated increases based upon the "loss," which includes not only "actual loss", which does not appear to be present, but also "intended loss" which means "the pecuniary harm that was intended to result from the offense," *see* Application Note 3.(A) (ii). Although the presentence report referred to the "potential sale price" of $300,000, such a measure is not a "loss" unless one assumes that, but for the fraudulent conduct, the victims would have received that price instead. Since Defendant was acquitted of all charges which related directly to McLeod's efforts to forge the deed and

obtain the property for next to nothing,  the "loss" attributed to him must take into account the amount of money which he and the other purchasers were prepared to pay the Roy heirs, in the end $165,000. Thus, even assuming that the Roy heirs could have gotten the "potential" $300,000 but for the fraud, their "pecuniary harm" would be only $135,000, which calls for a 10, not 12 level increase.

3. Defendant also asserts that the proposed "agreement" to purchase the property also reduced the expected costs to the heirs by $15,900 when the purchasers agreed to pay or to waive expenses which a seller would normally bear in an arm's length transaction, such that the "pecuniary harm," measured by opportunity lost, would actually be $119,100, which calls for an increase of only 8 levels.

4. The Court also increased the offense level by 2 levels, pursuant to U.S.S.G. §3B1.3, because Defendant "abused a position of trust" by holding himself out to be a United States Marshal. Defendant concedes that a United States Marshal is a position of trust, and, for purposes of this motion, concedes that he may be viewed as "providing sufficient indicia" of that status, *see* Application note 3. However, for the reasons set forth  in the Motion, Defendant asserts that his conduct did not facilitate offense in question, the fraud, and in fact, increased the value of the property to the Roy heirs.

5. Because the above issues to be raised on appeal could reduce Defendant's offense level by between 2 and 6 levels, and could reduce his sentence by as much as 9 to 22 months, and because the length of the appeal process cannot easily be determined, Defendant contends that the Court should grant him bond pending appeal.

Respectfully submitted

/s/

Richard K. Gilbert
Bar. No. 939884
601 Pennsylvania Avenue, N.W.
Suite 900, South Building
Washington, D.C.  20004
(202) 898-0857
(202) 544-0024 (fax)
rkgesq@juno.com

Attorney for Defendant

IN THE UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF COLUMBIA

UNITED STATES OF AMERICA        :

                                      :

               v                      :       Crim. No 07-78-02 (GK)

                                      :

NELSON BROCKENBORROGH      :

ORDER

Upon consideration of Defendant Nelson Brockenborrogh's Motion For Bond Pending Appeal (and the opposition of the United States thereto,) it is this _____ day of _____,2008, ORDERED

That the Motion is GRANTED, and the sentence of Defendant to a term of incarceration is SUSPENDED pending the appeal of this matter to the United States Court of Appeals for the District of Columbia Circuit; it is further ORDERED that

Defendant shall remain on the conditions of release previously set (plus the following additional conditions:)

_____

_____

_____

                                          _____

                                          Gladys Kessler
                                          United States District Court Judge