IN THE UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA : | |
| : | |
| v : | Crim. No 07-78-02 (GK) |
| : | |
| NELSON BROCKENBORRUGH : | |

MOTION TO STAY SENTENCE OF INCARCERATION UNTIL
RECEIPT OF TRIAL TRANSCRIPTS AND THE OPPORTUNITY
TO LITIGATE PENDING MOTION FOR BOND PENDING APPEAL

Defendant Nelson Brockenborrugh, through undersigned counsel, respectfully requests that the Court stay his sentence to incarceration long enough to permit counsel for both sides to obtain the trial transcripts and litigate substantial issues concerning Defendant's motion for bond pending appeal of his convictions. As grounds therefore, Defendant states the following:

1. Defendant was indicted on one count of conspiracy to commit wire fraud, wire fraud, first degree fraud, forgery and uttering a forged instrument. He was convicted by a jury of the conspiracy to commit wire fraud and wire fraud; he was <u>acquitted</u> of the other three counts. On February 14, 2008, Defendant was sentenced to 46 months incarceration, two years supervised release, a $10,000 fine and a $200 assessment.

2. The next day, February, 15, 2008, undersigned counsel (1) obtained the file of trial counsel, (2) ordered the transcripts, (3) entered his appearance and (4) filed a notice of appeal on behalf of Defendant. On February 22, 2008, undersigned counsel filed a motion for bond pending appeal. Because counsel had not seen the trial transcripts, the motion was based on the contention that there were legitimate bases to appeal the

1

length of the sentence. On March 6, 2008, a different Assistant United States Attorney entered the case for the United States and filed an opposition to Defendant's motion for bond pending appeal. That Assistant United States Attorney acknowledged that he also was new to the case and had not seen the transcripts (which are presumably being prepared).

3. The Court ordered that Defendant could "self-report," that is appear voluntarily at the designated Bureau of Prisons facility to serve his sentence. Defendant asserted in his motion that this fact is an implicit recognition that he presents no risk of flight or danger to the community. (Defendant has no criminal record prior to the instant offenses and has ample ties, both personal and financial, to the area.) In its opposition, the United States does not argue to the contrary. The central issue therefore is whether there is a substantial question of law or fact likely to be successful on appeal, in this case, one likely result in a reduced sentence which might be less than the expected duration of the appeal.

4. As set forth more fully below, the positions taken by the parties differ significantly; yet neither counsel has actually seen the transcripts. (Counsel for Defendant based his motion on the government exhibits, sentencing memorandum and presentence report, all of which were in trial counsel's file.) Given that there is no risk of flight, danger to the community, or prejudice to the government, Defendant submits that the Court should stay Defendant's sentence in order to give both sides a chance to review the transcripts and supplement their arguments. (Indeed, were Defendant to

commence his sentence, and <u>then</u> the Court, or the Court of Appeals, grant him bond, there would be added expense and inconvenience to the Bureau of Prisons.)

5. <u>Intended Loss</u>. The presentence report and government sentencing memorandum assert that Defendant and his codefendant had a contract to sell the house in question for $300,000. The record does not reflect how certain this contract was, what expenses and/fees would be paid or waived, and, most importantly <u>when and for how long</u> such a contract was in effect.

6. On October 28, 2006, three prospective purchasers, not including Defendant, negotiated with an FBI agent posing as James Roy, a grandson, acting on behalf of the Roy heirs; the meeting was consensually recorded. According to the transcript of the recording, the prospective purchasers believed that they had an agreement with the heirs to sell them the property for $165,000; in addition the purchasers apparently agreed to waive a real estate agent's commission and to pay the closing costs. Defendant, a fourth prospective purchaser, was not present at the meeting, but was contacted by telephone and apparently agreed to the figure.

7. Assuming for purposes of this motion that Defendant had participated in fraud during the negotiations with the Roy heirs,[1] the "intended loss" would be no more than the difference between the "expected" $300,000 sale price and the $165,000 Defendant and the other purchasers were prepared to pay the Roy heirs - $135,000. Moreover, the "agreement" would have saved the Roy heirs another $15,900 in costs

---

[1] The United States contended that codefendant McLeod and Defendant had attempted to persuade the heirs to accept a price below the market value of the property by making several false statements about the condition, and value, of the property.

3

normally assumed by a seller, because the agreement provided that they would assume some $6,000 in closing costs, and would waive the usual commission, which in the absence of the trial record, Defendant has calculated as $9,900 (a 6% commission on a purchase price of $165,000.) Thus, Defendant contends that the "intended loss" was only $119,100 should have only increased his offense level by 8, not 12 levels.

8. The opposition of the United States completely ignores these facts and argues that the entire $300,000 was the intended loss because Defendant tried to "steal" the house. (Gov't Opp'n at 2). Since there was apparently never any charge of larceny, presumably, this refers to the conduct of codefendant McLeod in fraudulently forging a deed and trying to obtain the property for a mere $10,000, conduct for which the Defendant was <u>acquitted</u>. Defendant contends that there is nothing <u>in the existing record</u> which would justify applying this conduct, and resulting greater "intended loss," to Defendant. (Indeed, it is currently unclear whether the expected sale contract was even in effect during this time.)

9. <u>Abuse of Position of Trust</u>: On October 18, 2005, Defendant and the three other prospective purchasers met with Katrina Robinson, the administrator of James Roy's estate, also to negotiate about buying the house. This meeting was also consensually recorded, and the transcript includes references to previous fires at the residence and to the fire department "condemning" the property. Defendant is alleged to have somehow used his badge as a Court Security Officer to pose as a United States Marshal to effect the removal of the tenants from the property. From the existing record, there is no evidence that this condemnation was not legitimate. Even if Defendant "overstated" his

authority, he contends that there was no "abuse of a position of trust" if Defendant only facilitated a lawful condemnation.[2]

10. In its Opposition, the United States also asserts that during negotiations with Ms. Robinson, Defendant made some representations that his influence with police officers, whom he had apparently known while a police officer himself, would assist Ms. Robinson in avoiding "civil fines" for "wrongful housing." It appears from the transcript of the recorded conversation with Ms. Robinson, that Defendant was referring to violations a landlord could incur if he or she permitted persons to live in property that was deemed uninhabitable. If, and the current record is unclear, the property had indeed been condemned by the fire department, people sneaking back into the house, would not only violate the law, but would, in fact, also subject the owners of the property to fines if they were found to have permitted it. If this is true, then Defendant's assuring Ms. Robinson that he would encourage the police to see that the law was being obeyed is no "abuse" of his position. The record is also unclear whether Defendant indeed took steps to contact the local police.

11. Defendant readily concedes that the Court, having heard the case, undoubtedly has a better understanding of the facts than either counsel at this point. He asserts, however, that neither the "intended loss" nor the "abuse of trust" issue are frivolous, and that, generally, trial judges benefit from _informed_ briefing by both sides on such issues. Given the lack of prejudice, Defendant asserts that, should the Court be

---

[2] The existing record indicates that the tenants included "squatters" who were stealing utility services and otherwise engaging in criminal behavior. In any event, removal of the tenant made the property _more valuable_ to the Roy heirs, the very antitheses of the offenses in question, fraud upon the Roy heirs.

5

unwilling, at the moment, to grant his motion for bond pending the entire appeal process, the Court should at least stay the sentence of incarceration until the transcripts can be obtained and the issues more fully briefed.

12. As part of the appellate process, counsel for Defendant is required to report to the Court of Appeals on the status of the transcripts every 15 days. Counsel will serve the report(s) on this Court (and government counsel, if he is not also appellate counsel for the United States.) When the transcripts are completed, this Court can set a briefing schedule for its purposes.

WHEREFORE for these reasons, and those included in the attached memorandum of points and authorities, Defendant respectfully requests that the Court stay his sentence to incarceration long enough to permit counsel for both sides to obtain the trial transcripts and litigate substantial issues concerning Defendant's motion for bond pending appeal of his convictions.

Respectfully submitted

/s/

Richard K. Gilbert
Bar. No. 939884
601 Pennsylvania Avenue, N.W.
Suite 900, South Building
Washington, D.C.  20004
(202) 898-0857
(202) 544-0024 (fax)
rkgesq@juno.com

Attorney for Defendant

IN THE UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA : | |
| : | |
| v : | Crim. No 07-78-02 (GK) |
| : | |
| NELSON BROCKENBORRUGH : | |

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
MOTION TO STAY SENTENCE OF INCARCERATION UNTIL
RECEIPT OF TRIAL TRANSCRIPTS AND THE OPPORTUNITY
<u>TO LITIGATE PENDING MOTION FOR BOND PENDING APPEAL</u>

1. 18 U.S.C. §3143 (b) permits a judicial officer to release a defendant sentenced to a term of incarceration pending appeal if the judicial officer finds by clear and convincing evidence that the defendant is not likely to flee or pose a danger <u>and</u> if the appeal raises a substantial question or law or fact that is "likely" to result in "a reduced sentence to a term or imprisonment less than the total of the time already served plus the expected duration of the appeal process."

2. In situations such as Defendant's case, where there is no risk of flight or danger to the community and the only issue is whether a given question of law or fact is "likely" to result in a reduced sentence, Defendant contends that the authority of 18 U.S.C. §3143 (b) confers the authority to stay a sentence of incarceration pending a careful consideration of such a question. In the case where current post-trial counsel, for both sides, are unfamiliar with the case, careful consideration would seem to require that counsel have access to the transcripts in order to sharpen their arguments for the Court's benefit.

7

Respectfully submitted

/s/

Richard K. Gilbert
Bar. No. 939884
601 Pennsylvania Avenue, N.W.
Suite 900, South Building
Washington, D.C.  20004
(202) 898-0857
(202) 544-0024 (fax)
rkgesq@juno.com

Attorney for Defendant

IN THE UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v | : | Crim. No 07-78-02 (GK) |
| | : | |
| NELSON BROCKENBORRUGH | : | |

ORDER

Upon consideration of Defendant Nelson Brockenborrugh's Motion To Stay Sentence Of Incarceration Until Receipt Of Trial Transcripts And The Opportunity To Litigate Pending Motion For Bond Pending Appeal (and the opposition of the United States thereto,) it is this _____ day of _____,2008, ORDERED

That the Motion is GRANTED, and the sentence of Defendant to a term of incarceration is SUSPENDED until further Order of this Court; it is further ORDERED that

Counsel for Defendant shall serve on this Court and counsel for the United States copies of his reports to the United States Court of Appeals for the District of Columbia Circuit concerning the status of the transcripts. When the transcripts are complete the Court will issue a further scheduling Order.

_____
Gladys Kessler
United States District Court Judge